UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

EDWIN LOPEZ,

           Plaintiff,

    v.

BURRIS LOGISTICS CO.,

           Defendant.

No. 3:12 - CV - 1039 (CSH)

SEPTEMBER 23, 2013

## RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION

**HAIGHT, Senior District Judge**:

## I.    INTRODUCTION

In this consolidated action, plaintiffs Edwin Lopez, Richard Lester, Ryan Montalvo, and Jonathan Valdes (collectively "Plaintiffs") seek recovery from their former employer, defendant Burris Logistics, Inc. ("Burris" or "Defendant"), for their wrongful terminations on February 21, 2012, one day following a water main break at Defendant's Rocky Hill warehouse, causing water to cover and freeze upon the warehouse floor, creating a slippery, hazardous condition. Plaintiffs allege that they were asked by two Burris supervisors, Xavier Gomez and Christopher Costa, "to help remove water from the warehouse." *See, e.g.*, No. 3:12cv1039, Doc. #1, at ¶¶ 45-46. Thereafter, another Burris supervisor, Dexter Lee, allegedly ordered the Plaintiffs to chip ice from the freezer area of the warehouse. *Id.*, ¶ 52. Two of the four Plaintiffs complied with the requests, and the other two refused to chip ice due to their concerns about safety and belief that such chipping was not within their job descriptions. No. 3:12cv1044, Doc. #1, at ¶¶ 67-68; No. 3:12cv1045, Doc. #1, at

¶¶ 66-67.  All four Plaintiffs commented to co-workers that  removal of the water "seemed unsafe" because in the past, whenever a spill in the warehouse occurred, the custom and practice was to put cones around the spill and to tape off that area until it could be mopped and cleaned so that employees did not slip."  No. 3:12cv1039, Doc. #1, at ¶ 49; No. 3:12cv1041, Doc. #1,  at ¶ 54; No.3:12cv1044, Doc. #1, at ¶ 64; No. 3:12cv1045, Doc. #1,  at ¶ 62.  The following day each Plaintiff was discharged "on the [alleged] pretext that [each] refused an order to remove water from the warehouse."  No. 3:12cv1039, Doc. #1, at ¶ 54; No. 3:12cv1041, Doc. #1, at ¶ 59; No. 3:12cv1044, Doc. #1, at ¶ 75; and No. 3:12cv1045, Doc. #1,  at ¶ 72.

Included in each Complaint filed in this consolidated action is a count for wrongful discharge in violation of public policy.  In a Motion to Dismiss, Burris argued that the "public policy" wrongful discharge claim in each Complaint should be dismissed  as "legally insufficient on the ground that an alternate remedy exists under Conn. Gen. Stat. § 31-51q" and such a statutory claim "has, in fact been pled in Count Three, thereby precluding the [P]laintiffs from bringing a wrongful discharge claim under Connecticut common[] law."  Doc. #17, p. 1.[1]  The  Court granted in part and denied in part that motion.  To the extent that the wrongful discharge claims were premised on allegations regarding wage violations and sexual harassment, the claims were precluded in that statutory remedies were available to pursue those claims.  In those respects, Count Two of each Complaint was dismissed.  However, to the extent that the basis for the wrongful discharge claim in each Complaint  pertained to the public policy against safety violations in the workplace, the Court held that the Connecticut Supreme Court has recognized a "clear and defined public policy"

---

[1]    As in its prior Ruling [Doc. #31], the Court's citations to docket entries are those filed on the docket of the *Lopez* or lead case in this consolidated action, No. 3:12cv1039, unless otherwise noted.

requiring employers to provide a safe workplace for their employees. *Parsons v. United Tech. Corp.,*

*Sikorsky Aircraft Div.*, 243 Conn. 66, 79-80 (1997). In the absence of a private right of action to

recover for such inherently dangerous conditions under Conn. Gen. Stat. § 31-49, Plaintiffs were

permitted to proceed with such a wrongful discharge claim. That claim sought to redress a separate

and unremedied wrong from Plaintiffs' § 31–51q claim, which was based on the public policy of

protecting employees' free speech. The motion to dismiss was thus denied in part.


II.    **PENDING MOTION**

Pending before the Court is Defendant's Motion for Reconsideration [Doc. #32] of the Court's

Ruling [Doc . #31], granting in part and denying in part Burris's motion to dismiss Count Two of

each of Plaintiffs' Complaints.[2] Specifically, Burris moves for reconsideration of the Court's denial

of Burris's motion to dismiss Plaintiffs' wrongful discharge claim "based on Burris's violation of

safe workplace public policy, including termination of Plaintiffs for protesting working conditions

which they reasonably believed constituted a hazard to their own health or safety." Doc. #32

(quoting Doc. #31 at p. 28). As Burris notes, that ruling was premised on the Connecticut Supreme

Court's holding in *Parsons v. United Tech. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66 (1977),

where plaintiff was "otherwise without remedy" with regard to a claim for termination in retaliation

for making safety complaints. Defendant now argues that Plaintiffs in this consolidated action have

a statutory remedy under Section 11 of the Occupational Safety and Health Act ("OSHA"), 29 U.S.C.

§ 660(c) and have in fact pursued that statutory remedy.

---

[2] The Court's prior Ruling is published in Westlaw as *Lopez v. Burris Logistics*, No. 3:12–CV–1039 (CSH), 2013 WL 3337799 (D. Conn. July 3, 2012). The standard for granting a Rule 12(b)(6) motion to dismiss for "failure to state a claim" is set forth fully therein. *Id.*, 2013 WL 3337799, at *4-5 (Section III, " Standard of Review" for Fed. R. Civ. P. 12(b)(6) motion).

Plaintiffs have failed to file opposition papers to the motion for reconsideration and weeks have passed since the time to respond expired.  Under Local Rule 7 of this Court, "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."  D. Conn. L. Civ. R. 7(a)(1).[3] The Court will resolve the motion for reconsideration herein.

## III.   DISCUSSION

### A.   Standard for Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995)  (citing *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990)).  The Second Circuit continues to adhere to the strict standard for reconsideration set forth in  *Shrader.  See, e.g., Smith v. New York City Dept. of Educ.,* No. 12–1004–cv,  2013 WL 1831665, at *3 (Table) (2d. Cir. May 2, 2013) ( "To warrant reconsideration, a party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.") (citing *Shrader,* 70 F.3d at 257).    Moreover, the Rules of Civil Procedure in this District dictate that "[m]otions for reconsideration . . . shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order."  D. Conn. L. Civ. R. 7 (c)(1) .

---

[3] In failing to contest the motion, Plaintiffs  provide no  opposition to the factual assertions and arguments set forth in Defendant's supporting papers.

It thus follows that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"   *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (quoting  18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790), *cert. denied*,  506 U.S. 820 (1992); *accord Lo Sacco v. City of Middletown*, 822 F.Supp. 870, 876–77 (D.Conn.1993) ("[T]he function of a motion for reconsideration is to present the court with an opportunity to correct 'manifest errors of law or fact or to consider newly discovered evidence.'") (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.1987)).

### B.   Statutory Remedy under OSHA, 29 U.S.C. § 660(c)

In the case at bar, Burris argues that the Court should grant in full its motion to dismiss Count Two for common-law wrongful discharge in violation of public policy, including the claim with respect to Plaintiffs' allegations that they were terminated for protesting hazardous working conditions.  Defendant bases this assertion on the argument that § 660(c) of OSHA provides an adequate statutory remedy for Plaintiffs' allegations regarding workplace safety, thereby precluding Plaintiffs' common law wrongful discharge claims.  Doc. #32.  Burris  further informs the Court that the Plaintiffs "have, and are actually asserting, a proper statutory remedy for their allegations of wrongful discharge in violation of Connecticut's 'safe workplace public policy.'"  Doc. #33, p. 2.  In particular, Burris asserts that  "although not plead in the [P]laintiffs' complaints, the [P]laintiffs[] have  a  presently  pending  retaliation  claim  before  the  Occupational  Safety  and  Health Administration."  Doc. #33, p. 2 n. 2 (citing the administrative proceeding of *Burris Logistics, Inc. v. Montalvo, Lopez, Valdes, Lester, Munoz*, Sharp (No. 1- 0280-12-023)).   Such information is

newly revealed to the Court, as it was neither included in Plaintiffs' Complaints nor referenced in the papers submitted by the parties on the Motion to Dismiss.

As the Court noted in its prior Ruling, "[u]nder Connecticut law, Plaintiffs may state a separate claim for common law wrongful discharge in violation of public policy, if they (1) plead alleged conduct by the employer which contravenes public policy and (2) demonstrate that they are '*otherwise without remedy* and that permitting the discharge[s] to go unredressed would leave a valuable social policy to go unvindicated.'" *Lopez v. Burris Logistics*, No. 3:12–CV–1039 (CSH), 2013 WL 3337799, at *5 (D. Conn. July 3, 2012)(quoting *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 159-60 (2000)(emphasis in original)).  Conversely, if an applicable alternative statutory remedy exists, Plaintiffs' wrongful discharge claim is precluded.  2013 WL 3337799, at *6 (citing *Burnham*, 252 Conn. at 162).

Section 660(c)(1) of Title 29 of the United States Code prohibits an employer from discharging or discriminating against an employee for filing complaints, instituting proceedings or otherwise exercising rights afforded by OSHA.  Specifically, § 660(c)(2) creates a remedy for an employee who alleges that he or she was discharged in retaliation for reporting violations of OSHA – "fil[ing] any complaint or  institut[ing] or caus[ing] to be instituted any proceeding under or related to [OSHA]" or testifying, or being "about to testify, on behalf of himself or others" in any proceeding or because of the exercise of any right afforded by OSHA.[4]  Pursuant to § 660(c)(2), an

_____

[4]  29 U.S.C. § 660(c) provides in relevant part:

(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act.

6

employee who believes that he or she was discharged in violation of § 660(c) may file a complaint with the Secretary of Labor within thirty (30) days following the discharge. 29 U.S.C. § 660(c)(2). Then, if the Secretary determines that the employee was terminated in retaliation for reporting violations of OSHA, the employee may bring an action against the employer in federal court. *Id.* In an action under § 660(c)(2), the court possesses jurisdiction to "restrain violations of [ 29 U.S.C. § 660(c)(1) ] and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." *Id.* (emphasis added).

## C. <u>Analysis</u>

In the present consolidated action, none of the four Plaintiffs has alleged in his Complaint that he was terminated in retaliation for filing an OSHA complaint, instituting an action under or related to OSHA, or testifying or planning to testify in a proceeding related to any right afforded by OSHA, 29 U.S.C. § 660(c)(2). Rather, in each of the Complaints, Plaintiffs allege that they were terminated in "[r]etaliation for making safety complaints" at the workplace. No. 12cv1039, Doc. #1, at ¶ 56, No. 12cv1041, Doc.#1, at ¶ 61, No. 12cv1044, Doc. #1, at ¶ 77; No. 12cv1045, Doc. #1, at

---

(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay....

¶ 74.  The "safety complaints" Plaintiffs describe in their Complaints relate to comments they made to fellow employees, noting that the removal of water spilled during the water main break in Burris's Rocky Hill warehouse on February 20, 2011, "seemed unsafe." No. 3:12cv1039, Doc. #1, at ¶ 49; No. 3:12cv1041, Doc. # 1, at ¶ 54; No.3:12cv1044, Doc. # 1, at ¶ 64; No. 3:12cv1045, Doc. # 1, at ¶ 62. Two Plaintiffs further allege that they refused to assist in the chipping of ice after the water froze.  No. 3:12cv1044, Doc. # 1, at ¶¶ 67–68; No. 3:12cv1045, Doc. # 1, at ¶¶ 66–67.

In its prior Ruling on Defendant's Rule 12(b)(6) motion to dismiss, the Court confined itself to the arguments of the parties, and thus ruled only as to whether the wrongful discharge claim was precluded by Conn. Gen. Stat. §31- 51q.[5]  The Court held that the ruling in *Parsons v. United Tech. Corp.*, *Sikorsky Aircraft Div.*, 243 Conn. 66, 86 (1997) governed.  In *Parsons*, the Connecticut Supreme Court explicitly recognized a public policy requiring an employer to provide a safe

---

[5] In a footnote to its supporting memorandum for reconsideration, Defendant explained its failure to make the OSHA preclusion argument as follows:

> In the original Motion to Dismiss (Docs. 16 and 17) and Objection (Doc. 23), none of the parties briefed this issue as the plaintiffs' Complaints alleged that their wrongful termination in violation of public policy counts were "plead in alternative" to the plaintiffs' counts sounding in wrongful termination in violation of Conn. Gen. Stat. § 31-51q (Count Three) and breach of the implied covenant of good faith and fair dealing.  (Count Four). *See Lopez* Complaint (Doc. 1) at p. 11-12. Accordingly, Burris never addressed the issue of wrongful discharge in violation of Connecticut's "safe workplace public policy" as it did not believe that such claims were being made by the plaintiffs in this consolidated action in federal court. This understanding was predicated on the fact that, *although not plead in the plaintiffs' complaints*, the plaintiffs' have a presently pending retaliation claim before the Occupational Safety and Health Administration. *See Burris Logistics, Inc. v. Montalvo, Lopez, Valdes, Lester, Munoz, Sharp* (No. 1-0280-12-023).

Doc. #33, p. 2 n. 2 (emphasis added).

8

workplace for its employees so that Plaintiffs' wrongful discharge claim could proceed.[6]  The sole issue addressed on Burris's Motion to Dismiss was whether Plaintiffs' common law wrongful discharge claim was precluded as "legally insufficient" on the ground that an alternate remedy exists *under Conn. Gen. Stat. § 31-51q*, Connecticut's so-called "free speech" statute.  Doc. #17, p. 1 (emphasis added).  The Court concluded that Plaintiffs' wrongful discharge claim, "as based on the public policy of preserving safety in the workplace, seek[s] to redress a separate and unremedied wrong from their § 31-51q claim, based on the public policy of protecting employees' free speech." 2013 WL 3337799, at *15.

On motion for reconsideration, however, Defendant now moves to dismiss on a newly asserted basis, arguing that Plaintiffs are precluded from pursuing their wrongful discharge claims by the statutory remedy of OSHA.  In support, Burris presents new evidence, representing that Plaintiffs have actually filed OSHA complaints stemming from their allegedly wrongful discharges on February 21, 2012.[7]  *See* Doc. #33, p. 2 n. 2 (citing OSHA claim of *Burris Logistics, Inc. v. Montalvo, Lopez, Valdes, Lester, Munoz, Sharp* (No. 1-0280-12-023)).  As legal authority for preclusion, Burris cites the Connecticut Supreme Court's holding in *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 165 (2000) that a "plaintiff's common-law cause of action for wrongful discharge

---

[6]  As in *Parsons*, the Court was "mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." *Parsons v. United Tech. Corp.*, 243 Conn. 66, 79 (1997) (citing *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 477 (1980)).  Nonetheless, the interest in safety in the workplace addressed a separate public policy violation from "free speech," Conn. Gen. Stat. § 31-51q, that, from the facts pled, appeared to be unredressed by statute.

[7]  It may be that Plaintiffs are aware of additional facts, not appearing in their Complaint, which support an OSHA claim.  It is, however, the availability of a statutory remedy, as opposed to the strength of their statutory claim, which may give rise to preclusion.

is precluded because she had a remedy under 29 U.S.C. § 660(c) for her alleged retaliatory termination."

In *Burnham*, the plaintiff Carole Burnham was employed as an office manager by two periodontists, defendants Edward Karl and David Gelb.  On November 5, 1993, she filed an anonymous complaint with the Connecticut State Dental Association, alleging that defendants engaged in unsanitary and unhealthy practices in violation of OSHA, 29 U.S.C. § 651, *et seq*.  On November 22, 1993, she was terminated by defendants and thereafter filed a complaint with the Hartford office of OSHA.  After her administrative complaint was closed in February 1994, following her failure to respond to the Hartford office's correspondence, Plaintiff filed a three-count complaint in Connecticut state court, including a count for wrongful termination in violation of public policy.  The trial court granted summary judgment for defendant on that count and, upon appeal, the Connecticut Appellate Court affirmed, holding, *inter alia*, that the count was barred by the existence of a statutory remedy for retaliatory discharge under OSHA.  50 Conn. App. at 395-96.  The Appellate Court clarified that "OSHA provides a specific remedy for an employee who is terminated by her employer in retaliation for participating in any action to carry out the purpose of the federal statute."  *Id.* at 395.

The Connecticut Supreme Court then affirmed, holding that the plaintiff was precluded from bringing a cause of action for wrongful discharge because, *inter alia*, "plaintiff's common-law cause of action for wrongful discharge [was] precluded because she had a remedy for her employer's conduct under 29 U.S.C. § 660(c)."[8] 252 Conn. at 158.   In dicta contained in a footnote the court

_____

[8]  The Connecticut Supreme Court concluded in *Burnham* that the plaintiff was precluded from bringing a cause of action for wrongful discharge for three reasons:

found that § 660(c)(1) contains no language specifying that the complaint be made to a "public body," citing *Donovan v. R.D. Andersen Constr. Co.*, 552 F.Supp. 249, 252-53 (D.Kan.1982) (employee's communications with media regarding conditions of workplace are protected under 29 U.S.C. § 660[c]). 252 Conn. at 164 n. 5. "Therefore," the *Burnham* court concluded, "the plaintiff's complaint to the dental association regarding the defendants' alleged violations of the act brought her within the antiretaliatory protections of 29 U.S.C. § 660(c)." *Id.*

Although the Supreme Court in *Burnham* did not require that the complaint be made to "a public body" under § 660(c)(1), it did not address whether the complaint must be made to an external person or entity – *i.e.*, whether, for example, as opposed to a whistleblowing complaint to the media, a criticizing comment to a co-worker would suffice under OSHA.   Similarly, the Connecticut Supreme Court in *Burnham* did not clarify whether and under what circumstances OSHA might also preclude a wrongful discharge claim for refusal to work, as opposed to a verbal or written complaint about workplace conditions. The *Burnham* court did, however, suggest that refusal to work might lead to preclusion, suggesting in a footnote that "even if the plaintiff had raised this claim [of retaliation for refusal to work], a question would remain as to whether . . . the plaintiff's statutory

---

First, we agree with the trial court that the plaintiff failed to present evidence that created a material issue of fact as to whether her termination violated the public policy embodied in § 31-51m.  Second, even if we were to conclude that the plaintiff's termination violated the public policy embodied in § 31-51m, the plaintiff's common-law wrongful discharge claim would be precluded by § 31-51m (c), which provides a statutory remedy for employer conduct prohibited under § 31-51m (b). Third, we agree with the Appellate Court that the plaintiff's common-law cause of action for wrongful discharge is precluded because she had a remedy for her employer's conduct under 29 U.S.C. § 660(c).

252 Conn. at 158.

11

remedy afforded by 29 U.S.C. § 660(c)(2) would preclude a common-law cause of action for wrongful discharge."[9]

At least one Connecticut Superior Court has refused post-*Burnham* to find that the statutory remedy of OSHA, 29 U.S.C. § 660(c)(2), precluded a common law wrongful discharge claim where the safety-related complaints were made internally to the employer's management. *Trimboli v. Von Roll Isola USA, Inc.*, No. CV094037507S, 2010 WL 2106190, at *4-5 (Conn. Super. Ct. April 15, 2010). In that case, however, the plaintiff was the employer's "Process Engineer and Safety Officer" and the reported "breaches of safety protocol were potentially extremely dangerous to [the company's] employees and the public at large." 2010 WL 2106190, at *4.[10] The *Trimboli* court

_____

[9] The Code of Federal Regulations relating to OSHA explains that whether an employee's refusal to work in an unsafe workplace is protected by OSHA depends upon, *inter alia*, the severity of the impending harm and the employee's good faith belief in level of the danger. *See* 29 C.F.R. § 1977.12 (b)(1)-(2) (stating that "as a general matter, there is no right afforded by [OSHA] which would entitle employees to walk off the job because of potential unsafe conditions at the workplace;" such hazardous conditions "will ordinarily be corrected by the employer, once brought to his attention;" however, "when an employee is confronted with a choice between not performing assigned tasks or subjecting himself to serious injury or death arising from a hazardous condition at the workplace" and the employee has unsuccessfully "sought [a correction] from his employer," he may be entitled to protection from subsequent discrimination from his employer).

[10] The *Trimboli* court elaborated on its ruling, stating that "the plaintiff could have more clearly and concisely plead that count one [under Conn. Gen. Stat. § 31-51m] is predicated on her external reporting to OSHA, while count three [for common law wrongful discharge] is primarily predicated on her internal reporting to the defendant prior to her filing a complaint with OSHA." 2010 WL 2106190, at *5 n. 7. *See also Dooijes v. K&B Transp., Inc.*, No. CV04-608-MO, 2005 WL 1838962, at *1 n. 1 (D.Or. Aug. 2, 2005) ("While OSHA provides remedies for employees terminated for reporting safety violations, plaintiff does not claim he reported a violation, or that he was fired for such conduct. Rather, plaintiff claims he was fired for refusing to drive his truck in violation of federal safety rules. Accordingly OSHA does not provide adequate remedies for plaintiff's claim."); *McLaughlin v. Gastrointestinal Specialists, Inc.*, 696 A.2d 173, 178 (Pa.Super.1997) ("Although the OSHA statute expressly protects from termination the employee who files a complaint with OSHA . . . , we hold that the public policy expressed therein does not go so far as to protect the employee who disrupts the orderly management of her employer's business by merely complaining within the workplace.").

explained its holding as follows:

> A fair reading of the plaintiff's complaint is that her common-law wrongful discharge claim is predicated upon oral and written complaints to *internal* management in regard to the health and safety violations that she observed in her capacity as Safety Officer prior to her ultimately filing a complaint with OSHA on April 1, 2009. Given that § 31-49 reflects a broad legislative concern for the physical welfare and safety of Connecticut employees, and that one Superior Court decision found legally sufficient a claim for wrongful discharge when the plaintiffs sought to protect the rights of subordinates and co-workers, the court finds that the plaintiff's third count survives the defendant's motion to strike. The plaintiff has no statutory remedy under § 31-49 and thus, is entitled to pursue her common-law wrongful discharge claim.

2010 WL 2106190, at *5 (emphasis in original). Pursuant to *Parsons*, the *Trimboli* court recognized that Conn. Gen. Stat. § 31-49 reflects a broad legislative concern for the physical welfare and safety of Connecticut employees. *Id.*, at *4.

The *Trimboli* court distinguished *Burnham* by stating that "[t]he [Connecticut] Supreme Court in *Burnham v. Karl & Gelb, P.C.*, *supra*, 253 Conn. at 169-70, declined to review the plaintiff's claim that she was discharged for refusing to work under unsafe working conditions, pursuant to the public policy of § 31-49, because it was not raised at trial." *Id.* at *4 n. 6. In other words, *Trimboli* recognized that the holding in *Burnham* did not abolish the rule of law in *Parsons* – *i.e.*, in the absence of a private action or statutory remedy, a plaintiff may pursue a common law wrongful discharge action due to a "clear and defined public policy" requiring employers to provide a safe workplace for their employees.[11]

---

[11] *See also  Thomes v. Clairol, Inc.*, No. CV000181452S, 2001 WL 617106, at *3 (Conn. Super. Ct. May 17, 2001) (holding employee  presented viable common law claim for wrongful discharge in violation of public policy regarding safety concerns where employee was terminated as the result of reporting potential manufacturing and safety violations at employer's plant to the director of human resources and senior vice president).

In the case in suit, in determining whether Plaintiffs' wrongful discharge claims should be precluded by their statutory rights under OSHA, this Court is guided by the Code of Federal Regulations ("CFR") which interprets OSHA for administrative implementation.[12]   Those regulations state that complaints under OSHA may include complaints, "if made in good faith," about occupational safety matters which are *lodged with an employer*.  *See* 29 C.F.R. § 1977.9 (captioned "Complaints under or related to the Act").  Specifically, the CFR clarifies that  "the salutary principles of the Act [OSHA] would be seriously undermined if employees were discouraged from lodging complaints about occupational safety and health matters with their employers. . . . Such complaints to employers, if made in good faith, therefore *would be related to the Act*, and an employee would be protected against discharge or discrimination caused by a complaint to the employer."  *Id.* (emphasis added).[13] Whether stray comments to a fellow employee and/or an outright refusal to work constitute "lodging a complaint" with one's employer  is not specifically addressed.  However, the CFR  interprets the scope of the term "complaints" broadly.

The consolidated Plaintiffs in suit made vocal complaints within the workplace regarding the slippery conditions in the Burris warehouse on February 20, 2012.  Two of them refused to chip ice

--------

[12]   *See Whirlpool Corp. v. Marshall*, 445 U.S. 1, 11 (1980) (regulation promulgated by the Secretary of Labor, acting under OSHA, is "entitled to deference unless it can be said not to be a reasoned and supportable interpretation of the Act.").  *See also  Commercial Sewing, Inc.,* No. H–81–397, 1982 WL 45033, at * 1 (Jan. 27, 1982) ("The Secretary's interpretations of the Act [OSHA] are entitled to great weight and are controlling if reasonable") (*quoting Marshall v. N.L. Industries*, 618 F.2d 1220, 1224 (7th Cir.1980)).

[13]  *See also  Commercial Sewing,  Inc.,*  No. H–81–397, 1982 WL 45033, at * 1 (Jan. 27, 1982) (pursuant to the Secretary's interpretation of 29 U.S.C. § 660(c)(1),  an employer may not discharge an employee who made a complaint to his or her employer) (citing 29 C.F.R. § 1977.9(c)).

as a dangerous endeavor given the lack of cleats on the soles of their mandatory steel-toed boots. No. 3:12cv1044, Doc. # 1, at ¶ 68; No. 3:12cv1045, Doc. # 1, at ¶ 66.  It is reasonable to conclude that Plaintiffs' complaints on that day, if made "in good faith," were related to their health and safety under OSHA.  Furthermore, one may deduce that if, as Plaintiffs claim, Burris allegedly retaliated against Plaintiffs for their safety-related complaints, Burris had to be aware of the complaints, such that they were effectively "lodged" with Burris.  Pursuant to 29 C.F.R. § 1977.9, Plaintiffs may attempt to seek potential relief for their discharges under OSHA, and in fact, have allegedly done so. Unbeknownst to the Court, they have each sought OSHA relief for their individual discharges by Burris, essentially conceding that they have a statutory remedy.[14]

Under such circumstances, Plaintiffs' Complaints in this consolidated action  fail to state a valid claim for public policy wrongful discharge. "[U]nder Connecticut law no cause of action for wrongful discharge is available when a plaintiff has a statutory remedy."  *See Blantin v. Paragon Decision Resources, Inc.*, 3:03CV2162(CFD), 2004 WL 1964508, at *1(D.Conn. Aug. 31, 2004) (wrongful discharge action based on a violation of public policy "is disallowed where the plaintiff has an available statutory remedy") (citing *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 161–62 (2000)).  *See also Nanos v. City of Stamford*, 609 F.Supp.2d 260, 268 (D.Conn. 2009) ("If . . . . a relevant state or federal law contains a private right of action which serves to protect the public policy allegedly violated, a wrongful discharge claim will fail. "); *Honeck v. Nicolock Paving Stones of New England, LLC*, No. Civ.3:04CV1577 (JBA), 2005 WL 1388736, at *2 (D.Conn. June 10,

---

[14]  Unlike in *Trimboli,* the  Plaintiffs at hand did not complain to Burris management in the course of  a job duty related to safety (*e.g.,* as a safety officer) on behalf of other employees or to protect the public at large.  Moreover, it would appear that  Plaintiffs have effectively conceded that Burris's alleged retaliation falls under the terms of OSHA by pursuing their administrative claims under that statute. 29 U.S.C. § 652(5).

2005) (same).   Plaintiffs are thus precluded from pursuing their "workplace safety" wrongful

discharge action in this Court.

Based on representations in Defendant's brief, the Court takes judicial notice that Plaintiffs

have actually initiated OSHA proceedings relating to their terminations following the water main

break at the Burris  warehouse on February 20, 2012.[15]   *See* Doc. #33, p. 2 n.2 & p. 3 n.3 (citing

OSHA Proceedings:  *Burris Logistics, Inc. v. Montalvo, Lopez, Valdes, Lester, Munoz*, Sharp (No.

1- 0280-12-023)).   Plaintiffs cannot pursue both avenues of recovery for the same claim – *i.e.*,  they

cannot pursue a common law  wrongful discharge claim related to workplace safety if they have

statutory relief for retaliatory discharge under OSHA.   In colloquial terms, under Connecticut law,

they cannot have their cake and eat it, too.[16]

Accordingly, in light of Burris's newly presented legal argument regarding preclusion by

_____

[15]    When evaluating a Rule 12(b)(6) motion, a court may take judicial notice of documentation from administrative proceedings.  *See, e.g., Hohmann v. GTECH Corp.*,  910 F.Supp.2d 400, 404-05 (D.Conn. 2012); *Golden Hill Paugussett Tribe of Indians v. Rell*, 463 F.Supp.2d 192, 197 (D.Conn. 2006).  By taking such judicial notice, the Court does not convert the motion to dismiss into one for summary judgment.  *Mancuso v. Dunbar*, No. 3:08–cv–1018 (VLB), 2010 WL 466004, at *4 n.3 (D.Conn. Feb. 5, 2010).

Moreover, the Court accepts that the cited OSHA proceedings are in progress and relate to the facts of this case based on Defendant's counsel's representations in his brief.  When "signing, filing, submitting, or later advocating" a "pleading, written motion, or other paper," counsel must certify that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(3).  Violation of said Rule may result in sanctions against counsel on the Court's own initiative.  *Id.* (c)(3).

[16]   One need not actually pursue one's statutory  remedy under OSHA for preclusion to apply.  *Mastropetre v. H. Bixon & Sons, Inc.*, No. CV980411636,  2003 WL 22040902, at *3 (Conn. Super. Ct. Aug. 7, 2003) ("Whether the plaintiff actually availed himself of the statutory remedy [under OSHA], however, is irrelevant to the question of whether he had a statutory remedy that would bar this [wrongful discharge] action in the first place.").  However, the fact that Plaintiffs have initiated OSHA proceedings – combined with their lack of opposition to the present motion – suggests that they do not contest the existence of their statutory remedy under OSHA.

OSHA, bolstered by Plaintiffs' actual pending OSHA claim, Plaintiffs' wrongful discharge claim based on workplace safety is precluded.[17] Count Two will be dismissed in its entirety from each Complaint in this action.

## IV.   CONCLUSION

Where a statutory remedy exists, a wrongful discharge claim fails as a matter of law. Plaintiffs have proceeded with their administrative remedies under OSHA to redress their retaliatory discharges by Burris. Because Plaintiffs have an available statutory remedy, the Court dismisses Plaintiffs' common law wrongful discharge claim as precluded under *Burnham v. Karl and Gelb, P.C.,* 252 Conn. 153 (2000). Whether construed as a separate Rule 12(b)(6) motion to dismiss based on a newly proffered legal argument or as a motion to reconsider the Court's prior ruling based on a related argument and newly revealed relevant facts, the Motion [Doc. #32] is GRANTED.[18] Plaintiffs' Count Two is dismissed in its entirety from each of the four Complaints in this consolidated action.[19]

---

[17]In general, "[a] motion for reconsideration cannot be employed as a vehicle for asserting new arguments or for introducing new evidence that could have been adduced during the pendency" of the underlying motion." *Palmer v. Sena*, 474 F.Supp.2d 353, 356 (D.Conn. 2007)(internal quotations and citation omitted). Here, although failing to proffer the present OSHA preclusion argument in its prior motion to dismiss, Burris now offers this argument as an off-shoot of its prior state statute (Conn. Gen. Stat. § 31-51q) preclusion argument, providing the Court with another basis to find statutory preclusion. The newly presented fact that Plaintiffs have pursued an OSHA claim sheds light on Plaintiffs' view of the applicability of OSHA – especially where Plaintiffs themselves made no reference to an OSHA claim or OSHA rights within their Complaint.

[18] Alternatively, Defendant's motion may be more properly viewed as a second, and uncontested, motion to dismiss in that it is based on a newly presented argument.

[19] Furthermore, because "there is a pending OSHA proceeding . . . the doctrine of exhaustion of administrative remedies applies." *Brotherton v. Burndy Corp*., No. CV87 02 24 81S, 1990 WL 283709, at *2 (Conn. Super. Ct. Sept. 24, 1990) ) (citing *Sharkey v. City of Stamford*, 196 Conn. 253, 256 (1985)). Plaintiffs would have to exhaust their administrative remedies prior to

In light of Defendant's pending Motion to Dismiss against Plaintiff Edwin Lopez [Doc. #36] for failure to prosecute, the Court stays all case deadlines with respect to Plaintiff Lopez until the Court rules on that motion.   The deadline of October 7, 2013 for Plaintiffs Lester, Montalvo, and Valdez to respond with respect to Defendant's pending Motion for Summary Judgment [Doc. #37] remains in effect.  The Court will rule on both pending motions prior to re-setting the deadline for Defendant to  answer any remaining claims in this action.

The foregoing is SO ORDERED.

Dated:   New Haven, Connecticut
          September 23, 2013

                                        /s/Charles S. Haight, Jr.
                                        CHARLES S. HAIGHT, JR.
                                        SENIOR UNITED STATES DISTRICT JUDGE

_____

initiating an OSHA claim in District Court.  29 U.S.C. § 660(c)(2).